Arthur E. Blyn, J.
This is a holdover proceeding against a tenant in a rent controlled apartment based on the refusal by the tenant to sign a new lease. The tenant had signed a lease at the time she rented the apartment. The lease has terminated and the landlord has requested a one-year renewal lease on the same terms and conditions as the prior lease.
This demand by the landlord was made pursuant to subdivision e of section 52 of the New York City Bent, Eviction and Behabilitation Begulations (hereinafter referred to as the Bent Law). Section 52 deals with proceedings relating to the eviction of tenants from rent controlled apartments with the requirement of a certificate of eviction. Subdivision e of the Bent Law sets, forth one of the circumstances by which such a tenant can be evicted without a certificate. It reads as follows: “ The tenant who had a written lease or other written rental agreement, which terminated or shall terminate on or after May 1, 1950, has refused upon demand of the landlord to execute a written extension of renewal thereof for a further term of like duration not in excess of one year, but otherwise on the same terms and conditions as the previous lease, except insofar as such terms and conditions are inconsistent with the Bent Law ”. The prior lease contained two clauses which the tenant claims are “ inconsistent with the Bent Law.”
Paragraph 39 of the prior lease required the tenant to pay the last month’s rent of the lease in advance. The landlord testified that he deposited the one-month security received by him *951 in a special interest bearing account as required by law, but that he deposited the advance payment of the last month’s rent in his own account. Section 65 of the Rent Law provides that no more than one month’s rent can be demanded by the landlord as security. In this case there is a question as to whether the. landlord was attempting to avoid this stricture by depositing one month’s rent denominated by him as security in the required special account and the other month’s rent — payment in advance for the last month’s rent — in his own account. If indeed the additional month’s rent is to be considered- as securtiy it is prohibited by section 65. If it represented payment for occupancy of the apartment in futuro the court believes that such required payment is inconsistent with the spirit of the Rent Law because such device could easily be used to subvert the restriction on security as spelled out in section 65.
Paragraph 40 of the prior lease states that “Painting and decorating are not included in the maximum rent.” Translated as understood by the landlord this meant that painting was the tenant’s obligation. The landlord’s testimony relating to painting was that he had purchased the building in 1958 and that he had never, since that time, painted apartments in that building. He offered in evidence a “ Notice of Maximum Rent ” prepared and executed by the landlord or agent of the building on November 19, 1943 (not the present landlord or agent) for the Office of Price Administration relating to the tenant’s apartment (not the present tenant). This form listed a series of equipment and services claimed by the .then landlord or agent to have been provided to the subject apartment on March 1,1943. There was no section on that form which specifically mentioned painting or decorating. There was an item entitled “Interior Repairs” next to which the then landlord or his agent had checked the box under a column designated “Yes”, meaning that such service was provided to that apartment.
The landlord relies on the fact that there was no specific reference on that form to the matter of painting and cites the case of Taub v. McGoldrick (133 N. Y. S. 2d 576); and on section 22 of the Rent Law; for his contention that this provision (the painting clause) is consistent with the Rent Law. Taub v. McGoldrick (supra) deals specifically with the same type “ Notice of Maximum Rent ” form introduced into evidence by the landlqrd. In that case the court did say that the failure of that form to separately list painting did not place the landlord on notice that he was agreeing to something beyond the ordinary meaning of the phrase (p. 578) “ interior repairs ”. The *952 court thereupon rejected the conclusion drawn by the Local Rent Administrator that the (regulation) form was proof that painting was a service provided by the landlord on March 1, 1943. So we now know that such (registration) form “ Notice of Maximum Rent ” is not in and of itself proof of the obligation of a landlord to paint. However, the case of McNulty v. McGoldrick (133 N. Y. S. 2d 246) takes the Taub case one step farther. In the McNulty case the court said (p. 247) “ Where housing accommodations are located in multiple dwellings in the- City of New York there is a presumption that the apartments were completely painted at two-year intervals. If the landlord alleges a different practice, the burden is upon him to produce evidence to establish such contrary practice which he claims existed on March 1, 1943, the Federal freeze date, Bersan Holding Corp. v. McGoldrick, 283 App. Div. 744.” Section 22 of the Rent Law, also relied upon by the landlord, states: “ Services included in the maximum rent. Every landlord shall furnish with housing accommodations the same dwelling space and the same essential services, furniture, furnishings and equipment as were furnished, or required to be furnished, on April 30, 1962 or any ■subsequent date determining the maximum rent.” The landlord thus argues that inasmuch as his painting practices from the date he purchased the building in 1958 to April 30,' 1962 required that the tenants do their own painting, section 22 reduces this obligation of the tenant to statutory language. In the case of Matter of Kathy Realty Corp. v. McGoldrick (281 App. Div. 850), however, the court pointed out that the Rent Administrator’s interpretation that painting practices which existed on March 1, 1943 governed and not the painting practices which existed on March 1, 1950 (the date when New York City took over the administration of rent control) was reason- . able and that the courts would not disturb such interpretation. Reasoning similarly with the statement of section 22 of the Rent Law as to services required to be furnished on April 30, 1.962, it seems clear that this date has to do with the transition (again) of the administration of rent control from New York State to New York City. This interpretation would thus retain the March 1, 1943 date as the standard for determining which services must be continued. It follows then that inasmuch as the “ Notice of Maximum Rent ” of the plaintiff’s predecessors was not indicative of the painting requirement (the Taub case) and inasmuch as the landlord has not sustained his burden of proof as to establishing the painting practices of the building as of March 1, 1943 (the McNulty case), paragraph 40 of the prior *953 lease is inconsistent with the Bent Law and cannot he included as a required clause in the renewal lease offered hy the landlord to the tenant. The fact that the prior lease contained the two objectionable clauses does not constitute waiver by the tenant inasmuch as section 17 of the Bent Law prohibits such waiver.
Judgment for respondent on the condition that respondent execute a renewal lease on the same terms and conditions as the prior lease, excluding paragraphs 39 and 40.
The counterclaim of the respondent for legal fees is dismissed. The tenant failed to comply with paragraph 32 of the prior lease. She also stated in writing to the landlord her flat refusal to execute any kind of a lease, denying that she was obligated to do so under the provisions of the Bent Law and claiming that she had the right to remain as a statutory tenant without executing a renewal lease. Subdivision e of section 52 set forth earlier in this decision plainly disproves her belief and contention. Under these circumstances the tenant is not entitled to attorneys’ fees.